IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRAVON JEFFERSON,

    Petitioner,

    v.

RICHARD GRAHAM, JR.,
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No.:  DKC-18-0037

## MEMORANDUM OPINION

Travon Jefferson, Petitioner, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his convictions arising out of the shooting of Durant Dowery. Respondents assert that the petition is subject to dismissal because the claims asserted lack merit. The issues are fully briefed, and no hearing is needed.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018);  *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons set forth below, the Petition is denied and a certificate of appealability shall not issue.

## BACKGROUND

On the afternoon of April 25, 2011, Durant Dowery was shot eight times as he exited the rowhome where he shared an apartment with his fiancé Cierra Harper; Mr. Dowery managed to survive his injuries.  *See* ECF No. 7-11 at 2-3 (Court of Special Appeals Opinion).  Both Mr. Dowery and Ms. Harper testified at the joint jury trial of Travon Jefferson and Philip Johnson on

attempted first-degree murder, conspiracy, and related handgun charges[1] in the Circuit Court for Baltimore City.  ECF No. 7-1 (docket entries).

On August 28, 2012, trial proceedings concerning pre-trial motions were on-going in the Circuit Court.  In the morning, the prosecutor reported that Mr. Dowery and Ms. Harper could not be located, and that body attachments had been issued the day before.  ECF No. 7-3 at 22-23.   A jury panel of sufficient size was not available that day in any event, and jury selection was postponed until the following morning.  *Id.* at 71.  The two were arrested later on August 28 at an address that had not been shared with law enforcement.  When they appeared before the trial judge, the State's Attorney expressed his belief that they were intentionally evading service of summonses to appear for trial.  *Id.* at 72-76.  Because the trial had been postponed a number of times, and based on testimony regarding efforts to locate Mr. Dowery and Ms. Harper from Detective Wade of the Baltimore City Police, the trial court granted the State's request to hold Mr. Dowery and Ms. Harper in custody to ensure their presence at trial.  *Id.* at 77-99.

In an ex parte bail review hearing for Mr. Dowery and Ms. Harper held the following afternoon, information was provided suggesting that Mr. Dowery and Ms. Harper had been threatened while at the Baltimore Central Booking and Intake Center ("Central Booking").  ECF No. 7-4 at 305 – 318.  Ms. Harper stated that when she was at Central Booking, she saw Mr. Johnson, who pointed at her.  *Id.* at 307.  Detective Wade also said that when he was taking Mr. Dowery into Central Booking, he heard a voice he recognized as Mr. Jefferson's threaten him from

---

[1]     Mr. Jefferson and his co-defendant were charged with attempted first degree murder; use of a handgun in the omission of  felony or crime of violence; wear, carry, or transport a handgun; reckless endangerment; possession of a regulated firearm after a previous disqualifying crime; conspiracy to commit murder; conspiracy to commit first-degree assault; use of handgun in the commission of a felony; and conspiracy to wear, carry or transport a handgun.  ECF No. 7-7 at 38-40.

the windows.  *Id.* at 308.  The State's request to release Mr. Dowery and Ms. Harper into Detective Wade's custody so that they could be housed in an undisclosed location at State expense was granted.  *Id.* at 309.   When trial resumed the following morning on August 30, 2012, the State disclosed the ex parte proceedings to the defense.  ECF No. 7-5 at 5-10.  Mr. Jefferson's counsel explained that at the time in question, Mr. Jefferson had no access to the booking area as he was housed in a different area of the jail and could not have made the threats alleged.  *Id.* at 7-8.  Counsel moved for a continuance because he believed that Mr. Dowery was falsely accusing Mr. Jefferson of the threat to bolster his claim concerning the shooting.  *Id.* at 8-9.  The court denied his request for continuance after the State's attorney expressed that he had no intention to use the threat allegation at trial.  *Id.* at 10.

Mr. Jefferson's counsel moved to suppress the photo array identification made by Mr. Dowery.  ECF No. 7-5 at 11-18.  Mr. Dowery was questioned about his identification of Mr. Jefferson and claimed he could not recall being shown the photographs or identifying anyone.  *Id.* at 16.  He also claimed he didn't remember seeing anyone when he was shot or making a statement to Detective Wade while he was in the hospital.  *Id.* at 17.  During cross-examination, Mr. Dowery admitted that Phillip Johnson was his cousin and Mr. Jefferson was a long-time friend.  *Id.* at 22-23.  The motion to suppress the photo array identification was denied.  The trial court reasoned that the only witness called by the defense did not acknowledge making an identification and therefore there was no evidence that any pre-trial identification was impermissibly suggestive.  *Id.* at 27-28.

Mr. Dowery testified at trial for the State.  ECF No. 7-5 at 47-166.  He explained that he was shot eight times and sustained one bullet wound to his head.  *Id.* at 49.  Mr. Dowery again claimed that he could not remember talking to Detective Wade or giving a statement while he was

hospitalized.  *Id.* at 57-58.  A transcript of Mr. Dowery's tape-recorded interview was used in an

effort to refresh his memory.  *Id.* at 58.  Mr. Jefferson's counsel raised an objection to the transcript;

the objection was overruled, and the State was allowed to use the transcript to refresh the witness's

memory under Md. Rule 5-802.1.  *Id.* at 59-66.  After looking at the transcript of the interview,

Mr. Dowery claimed that he still could not remember giving the statement.  *Id.* at 70-71.  The State

was allowed to play the recorded statement[2] for the witness; Mr. Dowery acknowledged

recognizing his own voice and the voice of Detective Wade but maintained he didn't remember

saying it.  *Id.* at 72-75.  The trial court then issued a ruling that the interview would be allowed

into evidence, finding that Mr. Dowery's memory loss was feigned due to a possible fear of

retribution.  *Id.* at 100-102.  The tape-recorded statement included Mr. Dowery's recollection of

the shooting and included the following:

> I was in the house with my girlfriend.  She was getting dressed to go get some
> crab claws from over Marlow(ph) Crab Store, and she was putting on her
> clothes, so I called her a slow poke.  So, I went out to check my mailbox, and
> she said, "okay."  And as I was checking the mailbox, our door, like, once you
> leave out, it locks.
>
> So I had my keys into my hand and put it in my pocket.  So I checked the mail
> box.  There was nothing in there.  I looked down the street and by the time I was
> looking up "Tray Tray" and Phillip Johnson – Travon Jefferson and Phillip
> Johnson was right at the bottom of my step.  "Tray Tray" gave (inaudible) and
> put his hand up and shot.  The first shot hit me like right here and so I just fell.
> Apparently they just want to go off.  They say, "Boy, that feel good, I guess it's
> on"
>
> And Phillip Johnson, my cousin, start coming up the step.  He only got to one
> step and he just start shooting, and shooting, and shooting.  And I was balling
> up into my vestibule just feeling the shots.

ECF No. 7-7 at 9.

---

2    The statements made by Mr. Dowery were not transcribed until the taped statement was
played for the jury upon their request during deliberations.  *See* ECF No. 7-7 at 6-23.

4

Cierra Harper, Mr. Dowery's fiancée, also testified for the State.  ECF No. 7-5 at 167-78. Ms. Harper recalled that while she was inside of her house and Mr. Dowery was in the vestibule of the house checking the mail, she heard gunshots.  *Id*. at 169.  When she opened the door, she saw Mr. Dowery on the ground, stopped momentarily to assist him, and gave chase down the street after the two shooters who were fleeing on foot.  *Id*. at 169-70.  Ms. Harper confirmed that the men she saw running down the street were Travon Jefferson and Phillip Johnson, whom she knew very well.  *Id*. at 171-2.  Cross-examination of Ms. Harper focused on her ability to observe the perpetrators and her inconsistent statement to the police that she had not seen anything but identified Mr. Jefferson and Mr. Johnson the following day.  *Id*. at 179-94; 195-212.

Phillip Johnson was recorded during phone conversations with his family while he was awaiting trial at Central Booking, which included statements made by Mr. Johnson implying his guilt.[3]  Over objection by the defense, the recorded calls were played for the jury.  ECF No. 7-5 at 90-96.  Counsel for Mr. Jefferson was successful in obtaining a limiting instruction regarding the recorded calls that admonished the jury not to consider the statements as evidence against Mr. Jefferson.  ECF No. 7-6 at 80-89.

After calling Detective Christopher Wade, who was the primary investigator in the case (ECF No. 7-5 at 222-47), and Crime Lab Technician Nancy Morse (ECF No. 7-6 at 20-35), the State rested its case.  ECF No. 7-6 at 96.  The only witness called by the defense was Detective Joseph Zientek, who was the secondary investigator on the case.  ECF No. 7-6 at 99-116.  Detective Zientek testified that he interviewed Cierra Harper, who told him it took her 30 seconds to get

---

[3]    During an August 27, 2012 pre-trial hearing, counsel for Mr. Jefferson, John Markus, moved for severance of Mr. Jefferson's trial and joined in co-counsel's objection to the State's proposed admission of recorded phone calls between Phillip Johnson and other unknown people that occurred while Mr. Johnson was in jail awaiting trial.  ECF No. 7-2 at 7-8.

outside where she heard gunshots and said she did not see a car or any gunmen.  *Id.* at 106.  Ms. Harper also told Detective Zientek that Mr. Dowery was outside for three to five minutes before the gunshots went off.  *Id.* at 107.  Detective Zientek went to Johns Hopkins Hospital with Detective Wade to interview Mr. Dowery.  *Id.* at 111.  At the time of the interview, Ms. Harper and Mr. Dowery's mother were at the hospital with him.  *Id.*

The jury returned guilty verdicts on all charges brought against Mr. Jefferson.  ECF No. 7-7 at 38-40.  On March 18, 2013, Mr. Jefferson was sentenced to life for the charge of attempted first-degree murder and 20 years consecutive for use of a handgun in the commission of a felony or a crime of violence.  ECF No. 7-8 at 33-34.  All other charges merged.  *Id.*

Mr. Jefferson filed a direct appeal to the Court of Special Appeals of Maryland.  ECF No. 7-9 (Appellant's brief).  He claimed that the trial court erred by denying the motion to sever his case from Mr. Johnson's case in light of the admission of the recorded phone calls made by Mr. Johnson while incarcerated awaiting trial.  *Id.* at 15-19.  Mr. Jefferson also alleged trial court error in connection with the court's decision to admit an out-of-court statement made by the victim while he was hospitalized which was allowed in before the court ruled on its admissibility.  *Id.* at 20-25.  Lastly, he claimed the evidence was legally insufficient to sustain his conviction.  *Id.* at 26-29.  In an unreported opinion, the Court of Special Appeals affirmed Mr. Jefferson's convictions on April 18, 2014.  ECF No. 7-11.

On September 21, 2015, Mr. Jefferson filed a self-represented petition for post-conviction relief with the Circuit Court for Baltimore City.  ECF No. 7-13 at 1-3.  Mr. Jefferson raised three issues related to an ineffective assistance of counsel claim.  *Id.*  He alleged counsel was ineffective when he failed to subpoena witnesses for the suppression hearing; failed to object to hearsay of his co-defendant; and failed to object to the State's improper closing argument.  *Id.* at 2.  An amended

petition for post-conviction relief was filed on Mr. Jefferson's behalf by counsel.  *Id.* at 4-51.  The amended petition raised the following claims:  Sixth Amendment right to effective assistance of counsel was violated by the trial court's refusal to permit Mr. Jefferson's appointed trial attorney the opportunity to investigate the validity of claims made against the defendants in connection with an alleged attempt to intimidate witnesses; ineffective assistance of trial counsel through failures to raise and/or competently pursue objections, motions to strike, for mistrial or new trial on the basis of improper and highly prejudicial testimony elicited during the State's case-in-chief, prosecutorial misconduct and inflammatory remarks by the State during closing argument; ineffective assistance of appellate counsel through failure to raise or pursue claims for reversal based on numerous instances of improper testimony, inflammatory remarks, gross prosecutorial misconduct and abuses of judicial discretion; ineffective assistance of trial counsel post-trial through failure to consult with Mr. Jefferson concerning post-sentencing rights to seek future modification or judicial review of his originally imposed sentence and by failing to file a motion for reconsideration of the life plus 20 years sentence.  ECF No. 7-13 at 5-6.

On July 6, 2017, the Circuit Court for Baltimore City granted Mr. Jefferson a belated right to file a motion for modification of sentence, but otherwise denied post-conviction relief.  ECF No. 7-14.  Mr. Jefferson's self-represented application for leave to appeal the denial of post-conviction relief raised the same issues presented in his amended petition for post-conviction relief.  ECF No. 7-15 at 3-4.  The application was summarily denied by the Court of Special Appeals on December 21, 2017.  ECF No. 7-16.  The court's mandate issued on January 22, 2018.  *Id.* at 3.  Mr. Jefferson filed his petition in this court on January 4, 2018.  ECF No. 1.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Long v. Hooks*, _F.3d _, 2020 WL5014875 at *11 (4th Cir. August 24, 2020) (quoting 28 U.S.C. § 2254(d)).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.*" Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## DISCUSSION

Mr. Jefferson seeks federal habeas relief on the following grounds: (A) the failure to sever his trial from Phillip Johnson's trial denied him his Sixth Amendment right because the trial court

admitted highly prejudicial statements made by Mr. Johnson in recorded telephone calls that implicated Mr. Jefferson; (B) admission into evidence of Mr. Dowery's recorded statement made while he was hospitalized and under the influence of medication was improper and denied Mr. Jefferson's right to due process; (C) the Court of Special Appeals' finding that there was legally sufficient evidence is based on an unreasonable determination of the facts as applied to law; (D) the trial court erred and rendered Mr. Jefferson's right to counsel ineffective when counsel was denied the opportunity to investigate, confront or cross-examine witnesses alleging witness intimidation at an ex parte, pre-trial hearing; (E) trial counsel was ineffective when he failed to move for a mistrial or to strike when the prosecutor inappropriately tried to introduce evidence that Mr. Jefferson had deliberately intimidated the witnesses; (F) ineffective assistance of trial counsel for failing to object, move for mistrial or to strike when the prosecution asked a detective about his experience with recanting and uncooperative witnesses in Baltimore City, non-fatal shooting cases; (G) ineffective assistance of trial counsel by failure to object to State's witness giving his opinion regarding the victim's initial position that he could not identify his shooters; (H) ineffective assistance of trial counsel when he withdrew an objection raised during the State's closing argument; and (I) the cumulative effect of trial counsel's errors violated Mr. Jefferson's Sixth Amendment right to the effective assistance of counsel.  ECF No. 1 at 7-22.  Each claim is addressed below.

## I.      Trial Court Error

### A.      Motion for Severance

Mr. Jefferson asserts that the trial court erred when it denied his motion for severance and allowed the jury to hear the recorded telephone calls between Mr. Johnson and his family members. ECF No. 1 at 7-8.  Mr. Jefferson takes particular issue with the statement made by Mr. Johnson

during the phone call that "[i]f he pointed *us* out *we* must have had one on *us* to do the job" in response to a question about the handgun charges against him. *Id*. at 8 (emphasis supplied). In Mr. Jefferson's view, the admission of the phone calls prejudiced him because there were references to his participation. *Id*.

This issue was raised by Mr. Jefferson on direct appeal, arguing that the statements made by Mr. Johnson in his recorded jail call, violated his right of confrontation and examination as set forth in *Bruton v. United States*, 391 U.S. 123 (1968). ECF No. 7-11 at 6. The Court of Special Appeals rejected the claim as "factually wrong" and first observed that under Maryland law a "prejudicial joinder" results when there is "damage from inadmissible evidence, not damage from admissible evidence." *Id*. at 7, citing *Eland v. State*, 92 Md. App. 56, 72 (1992). Further, "[r]ulings on matters of severance . . . are generally discretionary." *Id*., citing *Carter v. State*, 374 Md. 693, 704 (2003). The appellate court observed that Mr. Jefferson's argument was based on the written motion submitted by the State attributing the use of the pronouns "we" and "us" to Mr. Johnson. ECF No. 7-11 at 7. However, at the pre-trial motions hearing the "prosecutor expressly told the court that while he had quoted some of the recorded passages in his motion in limine, he had paraphrased others." *Id*. at 8. The recorded call at issue was played for the trial court:

> MALE SPEAKER [Johnson]: No, That's what I'm saying (inaudible). And I got handgun on person, three years (inaudible) ---
>
> FEMALE SPEAKER: They found one on you?
>
> MALE SPEAKER [Johnson]: No. Handgun on person, that means (inaudible). (Inaudible) handgun on person (inaudible). (Inaudible).

ECF No. 7-11 at 8.

Mr. Jefferson contends that the transcription of the phone call is inaccurate and simply replaces the objectionable language with "inaudible." ECF No. 1 at 8. The Court of Special

Appeals, however, noted that Mr. Johnson's counsel "disputed the content of the call as related in the State's motion in limine" stating that he did not hear Mr. Johnson say "if he pointed us out, that means we must have had one on us to do the job." ECF No. 7-11 at 8.  Additionally, the phone call was transcribed twice more when it was played for the jury during the trial and when it was played for the jury during deliberations.  *Id*. at 9.  Neither of those transcriptions included a reference to "us" or "we."  *Id*.  When it was played during the trial, Mr. Johnson's statement was transcribed as: "No, handgun on person, that means you going (inaudible) they charging you (inaudible) be shot.  Because, I mean, must have had a handgun on person to come and do the job.  That's what they look at right there."  *Id*.  When it was played during deliberations it was transcribed as: "No.  Handgun on person, that means they going (inaudible) charging you $8,000 a shot.  (Inaudible) had to have a handgun on person to come and do the job.  That's what they look at right there."  *Id*.

In rejecting Mr. Jefferson's argument, the Court of Special Appeals noted that the trial court is presumed to be correct and the burden of showing prejudice is on the party alleging it.  ECF No. 7-11 at 10.  Because the error relied upon by Mr. Jefferson was not supported on the record, the court found the argument to be without merit and concluded that there was no abuse of discretion in denying the motion to sever.  *Id*.

The State court's finding of fact in connection with Mr. Jefferson's claim that denial of severance was error is subject to the deference requirement found in 28 U.S.C. § 2254(e)(1), which provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

12

*Id*.  Mr. Jefferson has not met his burden of rebutting the presumption with clear and convincing evidence.  As such, the claim asserted does not present a viable basis for federal habeas relief.

### B. Admission of Mr. Dowery's Prior Recorded Statement

Mr. Jefferson asserts that the trial court erred when it allowed the prosecution to play the tape-recorded interview of Mr. Dowery in the hospital after he claimed on the witness stand that he did not remember being interviewed by Detective Wade in the hospital.  ECF No. 1 at 9-11.  Counsel for Mr. Jefferson objected to the admission of both the transcript of the interview and the recording.  *Id*.  This claim was raised on direct appeal and was based on three arguments.  ECF No. 7-11 at 10.  First, Mr. Jefferson argued that the trial court failed to make a determination on admissibility before admitting the statement.  *Id*.  Second, he claimed that the State failed to lay an adequate foundation for admission of the recording under Md. Rule 5-613(b).  *Id*.  Third, Mr. Jefferson claimed that there was no showing that the recording was reliable and therefore admissible.  *Id*.  The Court of Special Appeals rejected the claim based on the following analysis:

> During Dowery's direct examination, he repeatedly testified that he remembered nothing else about the shooting other than being shot at, and he did not remember speaking to the police in the hospital the day after the shooting.  The State asked him whether reading a transcript of his taped audio statement to the police the day after the shooting might refresh his memory.  Dowery replied that it might, and [Jefferson's] defense counsel objected.  At the ensuing bench conference, appellant's counsel began his argument by stating:
>
>> Well we're getting a little ahead of ourselves because before the State hears anything the Court has to rule that the - the recording can come into evidence and be heard by the jury.  And so I'm going to submit by argument on that right now because I'm sure that's the direction we're going in.  Your Honor knows the law quite well.  It's codified under Maryland Rule 5.80[2].1.
>
> Appellant's counsel went on to argue that while the statement was admissible under Md Rule 5-802.1, the statement should not be admitted because the Rule was unconstitutional.  He argued that the Rule denied appellant his due process rights because the reliability considerations used in *Nance* [*v. State*, 331 Md. 549 (1993)] were not codified into the Rule.  Appellant's counsel added that the

statement was unreliable because Dowery had time to fabricate his statement when he was permitted to confer with his mother and Harper prior to making it. The trial court, while noting appellant's counsel's argument, reminded him: "This is just to see if he remembers ever making a statement. So let's see where we go from that."

Dowery was then shown a transcript of his taped statement, but he said it did not refresh his memory. Dowery then said that hearing some of his taped statement might help him remember. The State played several portions of the audiotape. Dowery said he remembered some parts of his audiotaped statement but not other parts. When the State sought to play another portion to see if it refreshed Dowery's memory, appellant's counsel again objected. At the ensuing bench conference, the State sought to move the recorded statement in as substantive evidence under Rule 5-802.1. Defense counsels noted their objections to certain portions of the audiotape but the trial court ultimately ruled that the statement was admissible under Rule 5-802.1, subject to certain redactions. In reaching that conclusion, the trial court read Rule 5-802.1, noted that Dowery was at trial and subject to cross examination, and then made the following findings of fact:

> So here we have Durant Dowery, who has been the victim, and it's been now quite some time, but he is a relative, a cousin of the defendant and very good friends - well has known the other defendant for a very, very long time. There's been allegations that there have been threats issued, not only to Mr. Dowery, this is what's come to the attention of the Court, and to Ms. Cierra Harper through friends, family, neighborhood. So much so that they themselves evaded coming to court the first two days of trial. Judge Doory had to issue a body attachment. We got them and they were in custody. And despite being in custody then apparently there are allegations where there was some further contact and further threat. I find based on the testimony of Mr. Dowery today that it may be feigned memory loss based on the possibility of great fear of retribution in the future. So based on all of the above, I'm going to allow the statement to come under 5802.1 as a prior inconsistent statement.

The audio recording was then played for and a transcript of the recording was given to the jury.

As to appellant's first appellate argument, if appellant is arguing that the trial court erred in allowing the State to play several segments of the audiotaped statement before admitting the statement under Rule 5-802.1, appellant is factually wrong. As plainly shown in the record, the trial court permitted the State to play the recording to refresh Dowery's recollection of the events surrounding the shooting, and the trial court was well within its discretion to do so. *See* Md. Rule 5-612 (providing that a witness may use a writing or other item to refresh memory) and *Butler v. State*, 107 Md. App. 345, 354(1995)

("Whether a party may use a writing or other object to refresh the failing memory of a witness lies within the sound discretion of the trial court.")(citation omitted). Moreover, even if the trial court had admitted the statement as substantive evidence under Rule 5-802.1 prior to making an admissibility determination, which it did not, the Court of Appeals has specifically rejected that argument as a ground for reversal. *See McClain v. State*, 425 Md. 238, 252 (2012) (holding that "Rule 5-802.1, unlike some other Rules, does not require explicitly that findings be placed on the record, and we decline to read into the Rule such a requirement.")(citation omitted).

ECF No. 7-11 at 11-14.  The Court of Special Appeals additionally found that Mr. Jefferson's second and third arguments regarding admission of the statement were not preserved for appellate review and declined to reach the merits of those assertions.  *Id*. at 14.

Mr. Jefferson's claim in this court does not present a basis for federal habeas relief as it concerns a matter of state evidentiary law.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Further, the trial court's finding of fact regarding Mr. Dowery's feigned memory loss is entitled to deference; Mr. Jefferson's conclusory allegation that the finding of fact was unreasonable is not enough to satisfy the standard set out in § 2254(e)(1).

### C.    Sufficiency of the Evidence

Mr. Jefferson asserts that the Court of Special Appeals' conclusion that the evidence at trial was legally sufficient to support his conviction is an unreasonable determination of the facts.  ECF No. 1 at 11-12.  This argument is based on the fact that the prosecution's case relied upon the eye-witness testimony of Mr. Dowery and Ms. Harper, both of whom claimed in initial statements to the police that they did not see the shooters.  *Id*. at 12.  Mr. Jefferson claims the "prosecution did not produce any physical evidence that connected [him] to the shooting or place him at the scene

of the crime." *Id*.  He references Ms. Harper's admitted inability to see the shooting when it took place and Mr. Dowery's claim while testifying that he did not remember who shot him.  *Id*.  Mr. Jefferson maintains that Mr. Dowery's statement in the hospital was only given to police after he talked to family members which gave him the opportunity to manufacture an identification.  *Id*.

The Court of Special Appeals found that this claim was not preserved for review because trial counsel did not make a particularized motion for judgment of acquittal.  ECF No. 7-11 at 15-16.  Where, as here, an issue is declined for consideration on the basis of an adequate and independent state procedural rule the claim is procedurally defaulted and may not be considered by this court.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  Federal habeas relief is not available on this claim.[4]

## II.    Ineffective Assistance of Counsel

The remainder of Mr. Jefferson's claims concern the effective assistance of counsel.  When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must

---

[4]    In its alternative analysis of this claim, the Court of Special Appeals appropriately applied the well-established standard of review in *Jackson v. Virginia*, 443 U.S. 307, 319 (1976).  The evidence presented against Mr. Jefferson included the statement from Mr. Dowery identifying him as one of the shooters, as well as the testimony of Ms. Harper identifying Mr. Jefferson.  *See* ECF No. 7-17 at 15-17 (Court of Special Appeals Opinion).  The determination of the credibility of each witness is within the sole province of the jury and is not susceptible to review.  *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989); *Pigford v. United States*, 518 F.2d 831, 836 (4th Cir. 1975).

show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.  *Id.* at 696.

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]."  *Id*. at 698.  Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."  *Id.*  This court may not grant relief on a claim of ineffective assistance of counsel as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.  With these standards in mind, Mr. Jefferson's claims are reviewed below.

### A.   Ex Parte Hearing on Witness Intimidation

Mr. Jefferson asserts that the trial court erred when it denied counsel's request for a postponement so that the allegations raised that Mr. Jefferson and Mr. Johnson engaged in witness intimidation at Central Booking could be challenged.   The postponement would have allowed counsel an opportunity to investigate the allegations and effectively confront or cross-examine witnesses on the matter.  ECF No. 1 at 13-14.  According to Mr. Jefferson, the pre-trial ex parte hearing provided evidence of witness intimidation that was relied upon to "back door" Mr. Dowery's taped statement to police and seemingly allowed the State to suggest that "the victim testified the way that he had due to being intimidated by not only [Mr. Jefferson] and his co-defendant but the neighborhood attending a public trial seated in the courtroom."  *Id*. at 14.  He adds that the post-conviction court missed the point when it "focused its opinion on impeachment"

of the witnesses and ruled that "because neither eyewitness identified [Mr. Jefferson] as the shooter at trial . . . defense counsel was never called upon to challenge the identification." *Id*. at 13.

The trial court denied the request for continuance because of "the State's express representation that its case in chief would not include introduction of evidence regarding matters disclosed or alleged at the *ex parte* hearing." ECF No. 7-14 at 6.  Mr. Jefferson raises an ineffective assistance of counsel claim in connection with the trial court's denial of a continuance, maintaining that he was "entitled to investigate what was testified to or stated by those witnesses at the ex parte hearing . . . to challenge the State's trial evidence by seeking to impeach those witnesses on cross-examination." *Id*.  As noted by the post-conviction court, there must be a showing that counsel's performance was deficient under *Strickland* to support a claim of ineffective assistance of counsel. "Here, the defense sought a continuance to develop tools of impeachment of the state's witnesses in anticipation that those witnesses would finger [Mr. Jefferson] as the assailant in open court.  As trial played out, defense counsel was never called upon to challenge the witnesses' identification of [Mr. Jefferson]." ECF No. 7-14 at 7.  In short, counsel's performance was not deficient.

To the extent that Mr. Jefferson is asserting in his petition filed with this court that the witness intimidation allegations raised at the ex parte hearing were relied upon to support a finding that Mr. Dowery's claimed memory loss was feigned, the record does not support his assertion. The trial court found that Mr. Dowery was fearful of future retribution based on a number of circumstances, including the need for a body attachment to compel his presence at trial and his body language during testimony.  *See* ECF No. 7-5 at 100-102.  Trial counsel lodged repeated objections and focused his cross-examination of both eyewitnesses on their inconsistent statements regarding what they saw.  *Id*. at 148-66.  The post-conviction court's conclusion that counsel's performance was not deficient is a reasonable application of the law to the facts.

**B.** **Failure to Object to Evidence of Witness Intimidation**

Mr. Jefferson alleges that trial counsel was ineffective for failing to move for a mistrial or to strike when the prosecutor tried to introduce evidence that he had deliberately intimidated the witnesses. ECF 1 at 14-16. He explains that "[d]uring trial the prosecution secretly at every turn of questioning made reference to victim and witness being intimidated to justify their trial testimony of not identifying [Mr. Jefferson] . . . as the shooter[]." *Id*. at 15. Mr. Jefferson states that his trial counsel "was well-aware of the fact that witness intimidation was never established in the case . . . but chose to let the prosecuting attorney make mention of the allegations in the presence of the jury." *Id*. In Mr. Jefferson's view, when Mr. Dowery claimed he could not remember who shot him and recanted, "the State inappropriately tried to introduce evidence to communicate to the jury that [Mr. Jefferson] had deliberately intimidated the witness so that he would not identify Petitioner as the shooter at trial." ECF No. 7-14 at 7. He asserts that the post-conviction court's finding that counsel was not deficient in his performance is an unreasonable interpretation of the facts. ECF No. 1 at 14.

The post-conviction court found that counsel did not fail to object when the prosecutor tried to introduce evidence of witness intimidation so that Mr. Dowery's recorded statement could be played for the jury. Rather, counsel "objected, asked to be heard at the bench, and articulated a fulsome objection on this line of questioning and manner of evidence introduction." ECF No. 7-14 at 8. The court further found that "against the backdrop of defense counsel's robust preservation of the record (which objections the trial court overruled), Petitioner fails to persuade the court that trial counsel's election not to move to strike or for mistrial on this point falls below objective standards of reasonableness." *Id*. Such findings of fact are accorded deference in the context of a federal habeas proceeding.

### C.    Recanting Witness Question

The post-conviction court also found  unsupported by the record Mr. Jefferson's argument that counsel failed to object when the State inappropriately asked the lead detective about his "experience with 'non-cooperative victims' and 'recanting witnesses' in Baltimore City non-fatal shooting cases" as a means of "back dooring evidence of witness intimidation."  ECF No. 7-14 at 8.  "[D]efense counsel objected repeatedly and at nearly every turn during this line of questioning." *Id.*  The post-conviction court concluded that his performance did not fall below an objective standard of reasonableness "in view of his preservation of the record."  *Id.*  The post-conviction court's determination of counsel's performance in this regard survives scrutiny under § 2254(e)(1).

### D.    Challenge to Victim's Initial Refusal to Identify Shooters

This claim centers on testimony from Detective Wade when he was questioned about his interview of Mr. Dowery in the hospital.  Mr. Jefferson maintains that Detective Wade's testimony that he told Mr. Dowery that he believed he knew who shot him should have drawn an objection as well as a motion to strike or for a mistrial from his counsel.  ECF No. 1 at 18-19.  The post-conviction court also found that this allegation was not supported by the record.  The testimony at issue came about during questioning by Mr. Johnson's counsel, Mr. MacFee, regarding Detective Wade's investigatory interview of Mr. Dowery.  ECF No. 7-14 at 9.  The post-conviction court observed:

> Mr. MacFee asked Detective Wade at trial: "And at that point he agreed to talk to you and you presented the photo arrays, correct?" Detective Wade responded, "No. I spoke with him. I told him that I thought he knew who shot him." Mr. MacFee attempted to halt the answer: "Well let me stop you right there." The State interposed an objection on the grounds that the witness had not been allowed to complete his answer, which objection the court sustained by stating, "You may continue, detective."

*Id*.  The post-conviction court reasoned that Mr. Jefferson's claims that "(1) it is improper to ask a witness on the stand whether he believes or disbelieves the trial testimony of a preceding trial witness; and (2) it is improper to ask a law enforcement officer if he credits an accused's pre-trial statement" does not accurately describe the manner in which the testimony was evoked, nor was the failure to object evidence of deficient performance.  *Id*.  The court explained that:

> [T]wo things materially distinguish the instant facts from the circumstance Petitioner contends existed: (i) Mr. MacFee did not ask the detective the objectionable question of whether he believed the State's witness; and (ii) Mr. MacFee immediately attempted to halt the testimony.  Following the State's objection that the witness had not finished his answer, the court instructed the detective to complete his answer.  Defense counsel's election not to impose an objection did not fall below an objective standard of reasonableness on that point but rather demonstrated thoughtful restraint.

*Id*.  The post-conviction court's view of the evidence and conclusion that counsel's performance was not deficient survives scrutiny; federal habeas relief is unavailable on this asserted ground.

### E.      Withdrawal of Objection during closing argument

Mr. Jefferson claims counsel rendered ineffective assistance when he withdrew his objection during the State's closing argument when the State's Attorney said that Mr. Dowery did not testify that Mr. Jefferson shot him because "he had to face them down with the neighborhood in the courtroom."  ECF No. 1 at 20.  After the objection was sustained and the State concluded its closing argument, counsel approached the bench and the court offered to give a curative instruction to the jury to ignore the statement, but counsel withdrew the objection because he did not want to "highlight" the matter.  ECF No. 7-6 at 198;  203-4.  The post-conviction court found, however, that the objection was not withdrawn.

> Defense counsel did not state he withdrew the objection. On the contrary, he responded: "It was just improper so that's why I was objecting," to which the court replied, "Okay."

> In its totality, the court does not find that counsel withdrew his objection. The court concludes that defense counsel opted out of a curative instruction to avoid "highlighting" the issue, but maintained the objection on the basis that the State's suggestion of witness intimidation was "improper." Thus, on examination of the entire context of this portion of the transcript, defense counsel did not render services below the standard of reasonableness, as the court credits defense counsel's election to forego a curative instruction as a sound, strategic effort to avoid drawing the jury's attention to a fact injurious to Petitioner's interest.

ECF No. 7-14 at 13-14, *see also* ECF No. 7-6 at 204.  Trial counsel's choice to forego a curative instruction was a matter of trial strategy.  The "proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  Here, the post-conviction court's conclusion that counsel's performance did not fall below the standard of reasonableness is unassailable. *See  Harrington v. Richter*, 562 U.S. 86, 102 (2011) (standard under § 2254(d) is difficult to meet).

### F.      Cumulative Effect

In his final claim, Mr. Jefferson asserts that the post-conviction court erred when it did not conclude that the cumulative effect of the errors alleged amounted to a violation of his Sixth Amendment right to the effective assistance of counsel. ECF No. 1 at 21-22.  The post-conviction court found that Mr. Jefferson "fails to establish that trial counsel's performance and representation of his interests was unreasonable to 'a probability sufficient to undermine confidence in the outcome.'"  ECF No. 7-14 at 15, quoting *Bowers v. State*, 320 Md. 416, 436 (1990).  Claims of ineffective assistance of counsel, raised in the context of a federal habeas petition, must be viewed and evaluated individually. *See Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998).  Further, after concluding that none of the asserted errors by counsel amount to constitutional error, "it would be odd, to say the least, to conclude that those same actions, when considered collectively, deprived [Petitioner] of a fair trial." *Id*.  As with the post-conviction court's findings with regard

22

to Mr. Jefferson's other claims of ineffective assistance of counsel, the analysis of this claim is not unreasonable in light of controlling law.

## CONCLUSION

"[A] federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The state court's application of Supreme Court precedent "must have been more than incorrect or erroneous." *Id*. Mr. Jefferson fails to satisfy the high standard for entitlement to federal habeas relief and his Petition shall be denied.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be declined. *See* 28 U. S.C.§ 2253(c)(2). Mr. Jefferson may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

September 1, 2020

                                    /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge

23